The United States Court of Appeals for the Federal Circuit is now open and in session. I say to the United States and the Honorable Court. Thank you. Be seated. Good morning. The argued case this morning is number 14, that's 1627, Clearlamp, LLC v. LKQ Corporation. Mr. Cutler. Good morning, Your Honors. May it please the Court. We have at issue today two types of issues to address in this appeal. The first types of issues are garden variety patent issues, claim construction, obviousness, things of that nature, and we'll get to that as well. There's also a procedural type issue that relates specifically to the inter parte review proceedings that are, as you know, brand new to the patent world. It's specifically relating to the regulations and statutes that govern inter parte review. I'm going to begin my argument with this procedural aspect, and it's summarized well by Intervenor at page 14 of their brief in a head note that says the board acted properly by considering evidence and argument beyond those presented in the petition for review. Not only did the board consider that type of evidence, it solely relied upon that type of evidence in certain key respects with respect to certain elements of the 364 patent issue. Are you distinguishing between the propriety of evidence or as opposed to argument, because they might be treated differently? Well, no, I think evidence is what needs to be in the petition. Argument is going to be a tighter case to call, and I think you'd have to look at a case-by-case basis. I think there's some instances where evidence, I'm sorry, argument was also either raised in a reply brief to fill a hole in the prima facie case of obviousness in the petition and also relied on sua sponte by the board in the final written decision. So your argument is that all the evidence has to be in the petition? That's right. So what if some evidence is produced in discovery in the course of the proceeding? They can't rely on that? Well, Your Honor, discovery in… Well, no, what's the answer to the question? No, they can't rely on that. They cannot? No. Discovery in an inter parte review is not like discovery in federal district court where we can fill holes in a notice pleading complaint. In an inter parte review section, 35 U.S.C. section 312A3 requires… Allowing discovery just to benefit the patentee? No, there's three types of discovery, Your Honor, in an inter parte review. First is compelled discovery. That has never been granted to date. If you need to take a subpoena of a third party, things of that nature, the board hasn't allowed that to date. The second type is additional discovery. There have been limited examples where additional discovery has been granted to allow a couple documents here to prove real party interest or a couple documents there. The Darman case sent a very hard, very high burden to get additional discovery in inter parte review. The main type of discovery in inter parte review is what's called routine discovery. There's three things. There's the evidence that's attached to the petition. Obviously, in inter parte review, most of the documents are part of the petition and are filed with the petition. I think these discovery rules in terms of what may be relied upon in the petition is forecasting the post grant review where uses and sales can be used. There might be the need to produce other evidence like deposition testimony of witnesses and things of that nature. But the evidence, the first type of routine discovery is that relied upon in the petition. Second is any inconsistent statements that the petitioner is aware of that may be inconsistent with arguments that are made. The third type is the deposition of any witnesses that are relied upon in the petition or vice versa. So that discovery produces relevant evidence that the board can't consider it? Well, it depends on what you mean by evidence, Your Honor. Maybe that's where we're crossing the night here, two ships passing the night. The evidence that the board can rely upon to prove a prima facie case of obviousness needs to be in the petition. That's absolutely clear by the statutory regulatory scheme that was set up. We're not arguing. I'm sorry. What's the added evidence here? The evidence here are, I'll take one example. Spraying an original clear coating onto a headlamp. The board relied, if you took the petition and the final written decision and held them side by side, you would find that what was in the final written decision, the two arguments I'm going to tell you about, or two pieces of evidence, were not in the petition. The first one, the board relied upon expert testimony from our patentee's expert, which by definition, of course, came after the petition was filed. The second one was there was a secondary reference relied upon in the petition called the Eastwood reference. The Eastwood reference was provided and discussed in the petition only for the fact of removing a headlamp from an automobile. What the board came up with was a 12-page exhibit. The board found an excerpt deep within the Eastwood reference that it believed justified the spraying a clear coat on a headlamp. The problem with this is – That's so trivially obvious as a way to put a coat back on or return it to the headlight after you've cleaned it. Your Honor, that's not what the evidence of this case is. The evidence of this case is that LKQ is the world's – the United States' leading manufacturer – refurbisher of automobile parts. They were not doing this process. What they did is they started taking their headlamps and giving it to the inventors of the 364 patent, and the inventors then performed the process on the headlamps and brought them back. LKQ was so profoundly impressed by the quality, they started gathering the headlamps from all over the country. But that's not responsive. As I understand it, what you're saying is that the evidence about spraying as a way of putting the coat on wasn't in the petition. And you're arguing also that the removal of – the fully removing evidence wasn't in the petition. Of course, that latter is irrelevant under the claim construction adopted by the board. So you're really talking about the spraying, as Judge Lurie said, not being in the petition and being kind of well-known in the art, right? Absolutely. In terms of the procedural argument, if the board's claim construction is affirmed, then that's right, on the removal of the original clear coat, that's right, that's separate aside. But with respect to the spraying, the evidence relied upon, our expert testimony – and frankly, it's not our experts saying that spraying was known to be put on headlamps. That's not what the evidence that was relied upon stated. It was an interpretation of what our expert said. And secondly, this excerpt from Eastwood that doesn't actually stand for the proposition of spraying clear coat on a headlamp. To be sure that I understand your position, what's the point of having expert testimony and having depositions if that which comes out – let's say there are no new documents, so it's just what they say or their opinion or whatever. But what is the point, the entire point of this statute is to bring out information that might be brought out in the district court and therefore provides for depositions and experts. But you're saying that nothing that is said on either side can then be relied upon by the board? No, that's not what I'm saying, Your Honor. What I'm saying is the petition needs to have the evidence upon which a finding of unpatentability can be found. But that's the same thing as saying they can't rely on the discovery. Well, no, to the extent that the petition says that element A is found in prior art reference here, and then our expert opines that it's – you're wrong, it's not – and then the deposition is taken and you can undermine the testimony of the expert. That's what the deposition is for. You can go back to reexamination practice. In reexamination practice, expert declarations could be submitted and there was no opportunity to sit that person down in a chair and find out and pressure test their opinions. Here you can't have a system where a petition is filed and the rules require the petition contain all the evidence. There are rules that allow for supplemental evidence to be included. It's section 316.83 of the Patent Act, and then 37 CFR 42.123 say if you want to include additional evidence, that has to be done within one month of the decision to institute. But you're not limiting that to documentary evidence. You're also just saying as evidence what someone might have said in a deposition. Absolutely. Or in past examination. Listen, what 312.83 says is that a petition must identify with particularity the evidence that supports the challenge to each claim. So the evidence of a prima facie case must be in the petition. If it's not there, and in the patent owner response it is pointed out that there's a hole in the petition, which is exactly what happened here. It cannot open the door to brand new evidence in a reply brief or later where a patent owner has no opportunity to respond to it. That's the way the briefing is set up. The way this all played out, we identified the holes in the petition in the reply brief and in our expert depositions afterwards. They didn't ask about the pewter reference, for example. Oh, you know, spraying actually is there. Let's explain why spraying is there. That's not what the deposition… But your argument is that all the evidence has to be in the petition and that the board can't rely on anything that was developed later, no? The answer is – that is not what I'm saying. The answer – the board can rely – can look at deposition testimony to help inform its decision. But what happened here is a prima facie case of obviousness relied upon in the final written decision contains in the spraying example two pieces of evidence that absolutely were not contained in the petition. I don't understand. You have to be saying then that there was something that the board relied on that was outside the petition and that that's not proper. Correct. Let me do a better job. So, you know, how can it be that they have this proceeding to develop additional evidence but none of it can be relied on? That's right, but your honor is wrong. This proceeding is not to develop additional evidence. This proceeding is for a petition and the board's regulations, the trial practice guide is adamant that you need to get all your evidence into the petition in the first instance. Because in order to have a just, speedy, and expeditious process, we're only going to have three briefs here. We're going to have the petition, we're going to have a patent on response, and we're going to have a reply brief. I think your honor is incorrect to suggest that the proceeding is all about creating new evidence. That's what district court's about. This is supposed to be a shortcut of district court. The trial only took 12 months and there's a very streamlined briefing procedure and it's very prejudicial to patent owners if when they point out that a prima facie case was not set forth in the petition, that new evidence can be generated after their only response and to which we have no opportunity to respond. That's not how this is set up. That's why the additional evidence rules, 42.123, require any new evidence to be included within one month of the decision of the institute. Not coincidentally, that gives plenty of time to a patent owner to respond to that evidence in the patent owner response. It could be declaration testimony, it could be documentary evidence. But you can't have a system where new evidence comes in afterwards and there's no opportunity to respond, including at the oral hearing. The oral hearing is purportedly not amenable to new arguments and new evidence either. I know we're running out of time. Do you want to talk about the merits? Sure, your honor. With regard to the merits, the removing the clear coat limitation, the board read partially into the claim or partially removing an original clear coat or removing some of an original clear coat. That is just simply contradictory to the entirety of the intrinsic evidence. The specification of the 364 patent is entirely about creating a headlamp that is of original equipment quality. And it sets forth in great detail the step-by-step process by which this is to take place. And the only embodiment disclosed requires taking the entirety of the original clear coat off. And so to read in this removing some of the clear coat is not a reasonable interpretation in view of the specification. It's also important to recognize that right before this particular limitation, removing an original clear coat, is a limitation that says removing a headlamp. We all knew what removing a headlamp was. In fact, that was the main focus of the petition, that it was obvious to remove a headlamp and then perform procedures on the headlamp. Remove in that context was entirely off. That's what remove in the context of the clear coat ought to be as well. You know, to the extent that the court reverses that claim construction argument, again, with respect to the removing a clear coat limitation, there was also a hole in the petition. What was cited in the petition that's in our briefing was just a couple lines that said the CUDA reference discloses removing a clear coat. It is absolutely undisputed at this point in time that CUDA does not disclose removing, that the clear coating is left on. Because CUDA was talking about a shade tree mechanic type process where good enough was just good enough. And so they left clear coat on there. And our experts opined that that is not what an ordinary skilled mechanic would understand this limitation to mean. Because to get that original equipment quality that's set forth in the specification, and you put a new spray of coating on there, the coating would delaminate if you left it on there. That is not original equipment. The evidence relied upon by the board in this regard is, again, testimony from our expert, not their expert. And what our expert testified to was not that when you remove the headlamp from the car that you would know to take it all off. There's nothing in the art of record that would suggest that. The only way you get that step is by looking at our patent in perfect hindsight. What he said was if you remove the headlamp, the limited access corners would be gone. LKQ never asked the deposition, all right, now that the limited access corners are gone, would you or would you not know to take that off? That might be evidence that counteracted the concept that the prima facie case wasn't made in the petition, but that's not what was asked. What was asked was if you take this off, would the limited access corners be gone? Our expert said yes. Now the board takes a huge leap from that to say, well, if you would have thought to take it off, then you would have thought to take the entire clear coating off. That's not something that's in the art. There's no expert testimony about that. That is, and it's new evidence that came after the fact. In general, you know, there's a lot of gap filling going on. The board was trying to help out Petitioner by filling gaps, and the court's precedent in the KSM case suggests that that sort of generalities are not acceptable. You need to have documentary evidence to prove core findings of obviousness or unpatentability. Regarding the statically neutralized case, again, it's a claim construction issue. The interactive gift case suggests that there's two parts to the test of deciding whether a particular, you know, claim limitation ought to happen in order. One, you look to the claim language. Two, you look to the specification. The claim language, does logic or grammar suggest that it ought to be done in a certain order? The specification, does it directly or implicitly require that it be done in an order? All the evidence suggests that it be done in an order. If you read the specification of the patent, once you do this, you do this. Once you do that, you do that. It's all laid out there in perfect detail. And it only talks about static neutralization after the steps of removing the debris have taken place, the grinding and the buffing steps. After that debris has been created, now you statically neutralize it to remove it right before the spraying step to make sure that in an original equipment quality lamp, you have a nice, solid coating on there. CUDA, Eastwood, the other references, they're not concerned about that type of quality. And as a result, they don't disclose the standard neutralization at the very end of the process. It's also important to note that the claim language itself dictates an order. It says that you statically neutralize to facilitate the removal of all of the debris. That's suggesting that you created the debris in these orders, in this order, and an order matters. I've got about two minutes, 45 minutes left. I'm going to reserve the remainder of my time for rebuttal. OK. Thank you. Thank you. Mr. Engel? Good morning, Your Honors. May it please the Court. The board's decision here should be affirmed. I'd like to address the first argument that Mr. Cutler addressed, which is, was new evidence used to form the board's finding? I'm going to let the solicitor address the procedural aspects, but I want to point out that no new evidence was used to arrive at this decision. First off, the references that were in the institution were the references that were used to finally invalidate the claims that are on appeal here. The board relied on the 364 patent itself for discussion of the halo effect at A-9 of the appendix with respect to claim construction. The board's entitled to look at the patent itself to determine the proper claim construction. The board relied on Eastwood for a teaching of spraying. That's at A-22 to 23 of the appendix. Eastwood is part of the record. It was one of the instituted combinations. The board's clearly entitled to look at what the references teach to see whether or not spraying was known in the art. In the petition, we argued that spraying was known in CUDA. Clearlamp, in response, said, CUDA does not teach spraying. The board looked at all of the evidence, including other references, to see whether that coding or applying could be interpreted as spraying. Was that something known in the art at the time? The board at A-21 to 22 also relied on the testimony of Clearlamp's experts. That testimony was in their direct declarations, the direct examination that Clearlamp put in. That testimony could not have been in the petition. It only came in when Clearlamp put it in. And the board also relied on cross-examination testimony at A-18 to A-19. Again, cross-examination testimony has to be able to be relied on if it's authorized by the statute. Moving on to the claim construction issues in this case. I think this case presents an interesting decision for the court post-TEVA. Here you will see that there are many fact findings made because Clearlamp put in expert declarations to support all of the claim constructions that are on appeal. And we would submit that post-TEVA, those factual findings should only be overturned if there's not substantial evidence to support the board's findings regarding those claim constructions. Specifically, with respect to removing... In other words, TEVA applied clear error. Yeah. But you're saying, with respect to the patent office, you go down further. I believe that the in-rate guard side case talks about substantial evidence, and I think that equates it to the same clear error standard at the district court level. In other words, not de novo. Not de novo. That's correct, Your Honor. Well, except that TEVA says it's de novo insofar as intrinsic evidence. And here, the board's claim construction was based on intrinsic evidence, not extrinsic evidence. I don't know that that's entirely correct, Your Honor. It's an interesting case because we did not have a competing expert. They didn't adopt one expert over the other. To what extent were they relying on extrinsic evidence for the claim construction? Yeah. So, for example, Clearlamp put in an expert to say one of ordinary skill would understand that removing means removing the entirety of the coding. But they didn't rely on any term of art that was known. Under Phillips, and I don't understand Phillips to have been changed by TEVA, Phillips says an expert can be useful if he's construing a term of art that was known, but it's not relevant where the expert comes in and says, oh, well, I'm an expert. Let me tell you how to read the patent. And that's what the testimony is here. I think they testified how to read the patent, but they also testified that one of ordinary skill in the art would understand this term to mean one thing. And the reason that's important is because the CUDA reference… I don't see that, but I'm a little surprised that you're making their argument for them. Well, the CUDA reference says removing. It has the exact same word as in the patent. So, Clearlamp was forced to bring in an expert to say, well, removing, when you're looking at this specific type of thing, means one thing. The board looked at that fact-finding and decided that was not the case. They decided removing means removing at least a part of the coding, the part that has damage on it. Partially removing it is encompassed by the patent. Well, what the board said was that they used fully removing in the specification. They chose not to use that term in the claims itself. So, removing in the claims has to mean something different from fully removing. That's correct, Your Honor. I'll move on to statically neutralizing. I think there was an argument there that it's only showing it one place in the method. I think if you actually look back at the patent itself, it's shown at multiple different places. Would your argument be different if it were two places? It is shown in two places. So, my point is that it's shown at multiple places during the process. With respect to the obviousness teachings in this case, CUDA discloses coding or applying a clear code. The board found that spraying is encompassed by the art. We would submit that the board's finding is supported by substantial evidence and should be affirmed. With respect to removing, there is no dispute under the board that spraying is encompassed by the art.  The board also found under clear lamps proposed construction that the combination of references, and this is an important point, when you take the lamp out of the car and apply the CUDA method, there really is no dispute that it would remove the entirety of the coding if that's what you're intending to do. CUDA talks about the limited access corners possibly hindering it, but when you removed it from the car, those limited access corners no longer exist. If there are no further questions, Your Honors, that's all I have. Okay, thank you. Thank you from the representative of the office, Mr. Mattel. Your Honor, may it please the court. Section 316A5 of the Patent Act clearly authorizes both parties to engage in post-institution discovery of, quote, relevant evidence, including depositions of parties submitting affidavits or declarations. So the statute itself authorizes after institution, both parties are entitled to that discovery. At Section A8, the statute authorizes the patent owner to submit a patent owner response after the proceeding is instituted that authorizes that party to introduce additional factual evidence, including statements of affidavits and declarations. The petitioner is then authorized to engage in discovery, including the people who, a deposition of the persons who submitted those affidavits and declarations, and submit a reply. All of this is clear in the statute, and all of this is, frankly, undisputed. Patent owner's position in this case, though, is that all of that discovery that was obtained pursuant to the statute, that basically the petitioner can acquire all of that evidence and then can, frankly, throw it away because he's not allowed to use it in his reply, and that simply isn't a reasonable reading of the statute. The clear implication of the statute, also as implemented by the patent officer's regulations, is that each party is entitled to their discovery and then to use it in their responses and their replies. The principal limit on a petitioner's reply in these cases is that provided in the regulations, as Section 4223, which limits the petitioner in his final reply to responding to arguments that were raised in the preceding patent owner response. In this case, there's no dispute that the petitioner adhered to that limit. The principal argument that Clearlamp raises, appellant Clearlamp raises in this case, is with regard to whether the prior art disclosed removing all of the clear coat finish from the vehicle lamp. But it's clear that in its preceding patent owner response, Clearlamp itself directly raised this issue. This appears at pages A335 through 39 of the administrative record. Because Clearlamp raised the issue in its preceding patent owner response, LKQ Corporation, the petitioner, was entitled to respond to that in its reply. How does the presumption of validity go away because of the reexamination procedure? The statute still endows the patent with a presumption even if it's going to be reexamined, doesn't it? In this case, the statute itself, I believe this is at Section 316D, provides that the presumption of validity does not apply in these proceedings. In these proceedings, though, it is the petitioner who bears the burden of proving unpatentability by preponderance of the evidence. The board's role is to take in appropriate evidence, conduct the proceeding, manage the proceeding, and then weigh that evidence and simply determine whether the petitioner, LKQ Corp., has met his burden of proof, has demonstrated the unpatentability of his claims. In their reply brief in this case, LKQ Corp. suggests that not only can the reply not raise any additional evidence, anything that was discovered, they also suggest that the petitioner in his petition must try to anticipate anything that might be raised in reply and respond to those arguments in the petition. I would submit this is not only contrary to the clear structure of the statute and the implementing regulations, it would also be utterly impractical. The office's position is that the petition is for presenting the case for instituting the proceeding, and the subsequently authorized petitioner reply, which is, again, expressly authorized by the statute at Section 316A.13, is then for replying to the arguments that were raised in response. The inquiry that Clearlamp advances in this case, under this inquiry, this court wouldn't ask, does the evidence support the board's determination that certain claims are patentable or unpatentable? Instead, the inquiry would be, well, what did the petitioner know, and when did he know it? Sure, he raised this argument, and the evidence supports this, but could he have somehow raised this earlier? The director would submit this type of hypothetical inquiry is utterly divorced from the clear purpose of these proceedings to provide a cheaper, faster, and fairer alternative for deciding the validity of claims in a patent. The inquiry being urged here is inconsistent with the statutory structure, is inconsistent with the office's regulations, and would, frankly, be unworkable and would undermine the clear purpose of these proceedings. If time permitting, I'd like to respond to two minor points raised in Clearlamp's argument. It's been alleged that a patent owner only has one chance to respond to the petition. That's actually not the case. A patent owner is authorized at the petition stage to issue a preliminary response. This is at Section 313 of the Patent Act, and then after institution of the proceeding and discovery, the patent owner is allowed an additional response. This is authorized by 3188 of the statute. So the patent owner does have two opportunities to respond, provided by statute in the proceeding. We wouldn't concede that the fundamental fairness of the proceeding depends on having two responses, but the patent owner is given those two opportunities. Thank you, Mr. Mattel. Thank you, Your Honor. A couple of very quick points. We talked already, I'm going to go back to the procedure first. We talked already about how the statute requires the evidence upon which the petition relies for an obvious ground to be in the petition. We talked about if there's additional evidence that needs to be included, there are I just want to point out, the 37 CFR 42.23B says that a reply brief may only respond to issues raised in a patent owner response. I think it would be helpful if you talked a little bit about the merits. You only have a couple of minutes. Okay. On that point, I will, briefly on that point, there is evidence at 77 Federal Register 48767 that it's new evidence if it is needed to make a prima facie case. I think it's at page 7 of our reply brief. That excerpt, I think, is very important to point out that what was done here is new evidence and shouldn't be included. Regarding the merits of the case, I'm brought back to Judge Lori's comment that it's trivial to put spray on a headlamp. And the problem here is that's not the evidence of record. Even what was cited in the petition, what was cited by the board, there is no disclosure of spraying on a headlamp. Now, what's said in the opposition brief by LKQ is very important to point out. It says that clear lamps expert confirmed that spraying headlamps was known in the art. That's incorrect. If you read the testimony they cite, all he talks about is something to do with windshields. It has nothing to do with headlamps at all. So there is no evidence of spraying on a headlamp. And I'm not one of skill in the art, but if that was so clear and obvious, there should have been evidence to it in the paper. You know, Judge, you mentioned, Your Honor mentioned what the board said in its claim construction, looking at fully removing from the specification compared to the claims. That's some sort of hybrid claim differentiation argument that I'm not aware has any precedence to support it. The only embodiment in the specification was fully removing. The fact that the word fully was not included in the claim is not some sort of claim differentiation argument that can be made that limits our claim to, broadens the claim out to partially or, you know, only removing some of the clear coating. And the other thing I want to mention with regard to the static neutralization, counsel mentioned that it's mentioned twice, but not that this could happen at any point in the process. Each time it's mentioned, it's only talking about after the grinding and buffing step. It says it right in the specification. Static neutralization happens after the grinding and buffing step. Thank you, Your Honors. Okay, thank you. Thank you all. The case is taken under submission. That concludes the arguments for this morning. All rise.